UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DIVERSIFIED RESOURCES INC. | ) | |
| | ) | Case No. 19-13627-EEB |
| | ) | |
| | ) | |
| BIYA RESOURCES INC. | ) | Case No. 19-13628-JGR |
| | ) | |
| | ) | |
| | ) | |
| NATURAL RESOURCE GROUP INC. | ) | Case No. 19-13629-MER |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | **Jointly Administered Under** |
| | ) | **Case No. 19- 13627-EEB** |
| | ) | |

**DEBTORS' COMBINED MOTION TO USE CASH COLLATERAL AND REQUEST TO REDUCE NOTICE PERIOD TO TEN DAYS AND TO SET EXPEDITED HEARING**

DIVERSIFIED RESOURCES INC., ("Diversified") BIYA OPERATORS INC., ("BIYA") and NATURAL RESOURCE GROUP, INC., ("Natural Resource") collectively referred to as (the "Debtors"), by and through their counsel, Buechler Law Office, L.L.C., respectfully move this Court for an order authorizing the use of cash collateral pursuant to 11 U.S.C. § 363(c)(2) and the rationale articulated in *Chaussee v. Morning Star Ranch Resorts Company*, 64 B.R. 818, 825 (Bankr. D.Colo. 1986), to reduce the notice period for this Motion to ten days and to set this matter for a hearing prior to May 15, 2019 as follows:

1.	The Debtors simultaneously filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on April 30, 2019 (the "Petition Date") and are operating as a Debtors-in-Possession.

1

2. These cases are being jointly administered pursuant to this Court's Order of April 30, 2019 [Doc. No. 13].

**BACKGROUND OF FILINGS:**

3. BIYA owns certain oil and gas leases in the States of New Mexico and on the Ute Mountain Ute Indian Reservation and is the primary generator of production revenue for the Debtors, which averages about $75,000 to $90,000 per month, net of transportation costs. Diversified, in addition to its 98% ownership of BIYA, owns certain non-producing leases in the State of Colorado. Natural Resources owns certain non-producing shallow well leases near Broomfield, Colorado.

4  Diversified provides administrative functions for all the Debtors. While BIYA, Natural Resources and Diversified are operated and maintained as separate corporations, the three Debtors enjoy common management, common operations, and separate but commonly maintained accounting systems, all maintained at a joint corporate headquarters.

5. BIYA, Natural Resource and Diversified enjoy the benefit of no significant major secured creditor or secured debt but there are litigation matters, an arbitration award/ judgement and unsecured claims. Prior to these filings the management of the Debtors developed an operational and drilling program designed to maximize the Debtors' New Mexico assets and to increase production from a current level of approximately 1500 barrels per month to a future goal of over 1800 barrels a month or more, depending upon capital funding. This plan is dependent upon the unfettered access to current production revenues and through either self-funding or capital or loans future development funds being available to the Debtors. Unfortunately, the litigation costs, a recent drop in commodity prices, a dispute with the Ute Mountain Ute Indian Tribe over access and environmental issue, and general uncertainties and uneasiness of potential lenders or investors caused by such matters has put a chill upon the Debtors ability to raise funds or sell assets outside of the protections and tools of Chapter 11.

6. The Debtors intend to quickly file a Joint Plan of Reorganization that, it is anticipated at this time, will provided for a two-pronged approach. First the Plan will likely propose the sale of 100% of the stock of BIYA to a third party company, the assumption of current environmental liabilities up to a cap to be negotiated between the parties or as determined by this Court, the possible assumption and assignment of the oil and gas leases of the Debtors, (subject to the buyers' right to exclude certain leases or assets), a commitment of capital to be used by the purchaser to implement and bring into production the Debtors' current development plan for its New Mexico and Ute Indiana Mountain Reservation assets, and potentially a new value cash contribution from current shareholders who wish to retain their equity interests. The Debtors hope to further negotiate a carve out for unsecured creditors of both Diversified and BIYA as part of the sale of assets.

7. The second path, admittedly more challenging is to retain the assets within the BIYA entity and to either self- fund or more likely attract new capital to implement the drilling program, but only after a cap on current environmental liabilities and clean up obligations is negotiated between the parties or as determined by this Court.

8. The financial issues and possible solutions facing Diversified Resources Inc., Natural Resources and BIYA Operators Inc., are significantly inter-related. The issues that will need to be resolved in all the Debtors' cases will be, to a great extent, identical, although separate claims classifications and treatment of claims for each entity will be respected and maintained.

9. The Debtors have prepared a proposed 180-day budget for its combined and separate operations, **see Exhibit "A"** attached hereto, which is both a combined budget and separate budgets for each Debtor entity.

10. The Debtors have wages for (4) W-2 based employees of Diversified and/or BIYA included in their budget, Exhibit "A, which includes 5 days pf pre-petition wages for a total amount of

$3,835.86. The Debtors seeks permission to pay this relatively small amount for pre-petition wages as part of this Motion and the budget approval.

### Pre-Petition Loans – BIYA

11. BIYA does not have secured debt in cash collateral. A UCC-1 search for BIYA in New Mexico, its place of incorporation, shows no filings. Similarly, a UCC-1 search in Colorado where its headquarters are located shows no filings of any kind.

**12.** Upon information and belief Richard and/or Debbie Baldwin ("Baldwins") claim a unperfected mortgage (sic) in all the assets of BIYA by virtue of an unrecorded mortgage agreement dated October 14, 2014, **Composite Exhibit "B"** hereto, along with a security interest in the shares of BIYA stock owned by Diversified and have filed a UCC-1 in New Mexico on May 2, 2018 naming BIYA as the Debtor and claiming a lien in the stock owed by it in BIYA, **see Exhibit "B"** hereto. The Baldwins claimed lien in the stock of BIYA and its assets is not properly perfected as they have not obtained possession or control over the stock and did not record their asserted mortgage. In any event the claimed stock lien and mortgage is not an interest in cash collateral of either BIYA or Diversified and is not entitled to any adequate protection payments or other protections.

13. Mr. Randy Taber claims a royalty interest or lien (sic) in certain oil and gas leases located in San Juan County, New Mexico but virtue of a recorded Secured Promissory Note for $350,000 dated February 5, 2019 and recorded in San Juan County New Mexico on March 4, 2019, see **Exhibit "C"** hereto. The claimed lien is a royalty interest in certain BIYA wells and is not entitled to any adequate protection payments or other protections.

14. The Debtors do not believe that any party claiming a lien in the assets of BIYA is entitled to adequate protection payments or other protections other than the continuation, post-petition, of the asserted lien or royalty interests without prejudice to the Debtors' rights to challenge and set aside or

void the claimed lien.

## Pre-Petition Loans – Diversified Resources Inc.

15. Diversified believes it has no present secured lender or secured debt of any kind but a UCC-1 Search in Nevada, its state of incorporation, reflects a UCC-1 financing statements filed by an unknown party dated October 4, 2016 through the use of a filing agent, see **Exhibit "D"** filed by CT Corporation as the agent for an undisclosed principal.

16. Attempts to reach the filing agent by mail and e-mail have been unsuccessful and repeated phone calls to a listed 800 number remain unanswered. The Debtors have, per the certificate of service filed herewith, notified the filing agent of the filing of this Motion.

17. The Baldwins hold an arbitration award now reduced to a judgment against Diversified only. The Judgment has not been recorded and no judgment lien has been perfected prior to this filing, they remain unsecured creditors.

18. The Debtors do not believe that any party claiming a lien in the assets of Diversified is entitled to adequate protection payments or other protections other than the continuation, post-petition, of the asserted lien or royalty interests without prejudice to the Debtors' rights to challenge and set aside or void the claimed lien.

## Pre-Petition Loans – NATURAL RESOURCES

19. A UCC-1 search for this Debtor did not reveal any claimed liens and the Debtor does not believe it has any secured creditors entitled to adequate protection payments.

**Relief Requested**

20. The Debtors have submitted a combined operational budget for the next 180-day period, see Exhibit "A" hereto. This budget provides for the payment of normal operating expense and post-petition obligations as they may accrue, including UST quarterly fees and future professional fees.

21. The Debtors need immediate use of its cash and accounts receivable to operate its business and to keep its employees and contractors on the job. The cash collateral budget does include the payment of all wages, including 5 days of pre-petition wages.

22. The Debtor's business depends upon uninterrupted access to funds that are held in its accounts necessary to operate, meet payroll, and fund its other operating expenses necessary to maintaining its ordinary course of business. The Debtor will use cash collateral to generate new business and accounts receivables during the bankruptcy case.

23. The Debtors are seeking Court authorization to use cash collateral in order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which secured creditors may have an interest.

*<u>Payment of Pre-Petition Wages Not to Exceed Statutory Limit</u>*

24. The normal payroll for the Debtors is processed every two weeks through a third-party payroll vendor. As of the petition date the Debtors owe wages to their employees for five days.

25. The Debtors have funds available to pay, in the ordinary course of business, its next payroll to be made on May 15, 2019. As part of that payroll the 5 days of pre-petition wages or approximately $3,835.86 will be paid out to the employees. None of the amounts to be paid for pre-petition wages exceeds the sum of $12,850.00 to any one employee. The employees to be paid include management and officers of the Debtors.

26. It is important if not critical to the Debtors that employees are paid in the ordinary curse and that the continuity of the work force and management is preserved. While no employee has yet threatened to leave if not paid, the Debtors wish to avoid any disruption in its workforce and to maintain employee morale and attitude.

27. The payment of approximately $3,835.86 in pre-petition wages will not impair or impeded the Debtors ability to jointly reorganize and will not harm or prejudice any creditor or party in interest, to the contrary to payment is intended to preserve e and protect those rights and interests.

***Request to reduce Notice Period to Ten Days and Set Hearing prior to May 15, 2019***

28. The Debtors were able to make their customary payroll prior to the chapter 11 filings on April 29, 2019. The next payroll date in May 15, 2019. The Debtors desire that this matter be heard on an expedited basis such that the normal payroll on May 15, 2019 might be made.

29. No party or creditor will be harmed by the reduction of the notice period to ten days.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, a proposed form is filed herewith, reducing the notice period to ten days and setting an expedited hearing to consider the above detailed motion, and for such further and additional relief as to the Court may appear proper.

DATED this 2nd day of May 2019           Respectfully submitted,

                                          BUECHLER LAW OFFICES LLC

                                          */s/ Michael J. Guyerson*
                                          _____
                                          Michael J. Guyerson, #11279
                                          999 18th St., Suite 1230
                                          Denver, Colorado 80202
                                          Telephone: 720-381-0045
                                          Fax:720-381-0382
                                          Mike@kjblawoffice.com